IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FANTASIA TRADING, LLC D/B/A ANKERDIRECT,<br><br>            Plaintiff,<br><br>    v.<br><br>360 ELECTRICAL, LLC,<br><br>            Defendant. | C.A. No.<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff Fantasia Trading, LLC d/b/a AnkerDirect ("AnkerDirect") hereby brings this complaint against Defendant 360 Electrical, LLC ("360 Electrical") and alleges as follows:

### PARTIES

1. Fantasia Trading, LLC d/b/a AnkerDirect is a Delaware corporation with its principal place of business at 5350 Ontario Mills Pkwy, Suite 100, Ontario, California 91764.

2. On information and belief, 360 Electrical, LLC is a Utah limited liability company with its principal place of business at 1935 Vine Street, Suite 360, Salt Lake City, Utah 84121.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201, 2202, 1331 and/or 1338(a), because this action arises under the laws of the United States, in particular the Patent Act of the United States, 35 U.S.C. § 100 *et seq.*, and seeks relief under the Federal Declaratory Judgment Act.

4. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same

case or controversy.

5. This Court has personal jurisdiction over 360 Electrical. 360 Electrical purposefully directed its conduct at this forum including by sending a letter to "Anker Technology Co. Limited"[1] in this District, which threatened to file suit in this District and attached a complaint prepared for filing in this District.

6. Venue is proper in the District of Delaware under 28 U.S.C. §§ 1391(b) and/or 1400(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because this Court has personal jurisdiction over 360 Electrical.

## BACKGROUND

### Anker's History and Products

7. The Anker family of companies (collectively, "Anker") is a global leader in technology for charging electronics, including portable chargers and wall chargers. Anker has won multiple design awards for its products.

8. Anker was founded in 2011 by Steven Yang, who previously worked as a software engineer at Google in California. In its first year, Anker began selling mobile accessories on Amazon in the United States and quickly expanded sales to the UK, Germany, France, Italy, and other European marks. In 2013, Anker introduced its PowerIQ™ technology for faster charging of devices. In 2014, Anker became a leading USB charging brand in North America, and Anker expanded its offline sales by beginning to sell products through Staples. In the following years, Anker began selling its products through an increasing number of retail channels, including Target, Best Buy and Walmart.

---

[1] Anker Technology Ltd. is the former name of Anker Innovations Limited, which wholly owns AnkerDirect.

9. Anker is an innovator that does not and need not copy the designs of others. In the past two years, Anker has won 32 industrial design awards, including the Red Dot Design Award, the IF Design Award, and the G-Mark Design Award. In 2018 and 2019, Anker won Amazon's Global Open Store Seller of the Year Award two years in a row. Anker has always prioritized quality in building its brand, and over time it has steadily increased its R&D investments. In this work, Anker focuses on providing better products and experiences to users. Anker stands behind its products and has built a customer service team to provide consumers with 18 months of after-sales protection. Today, Anker has over 65 million customers in more than 100 countries and regions globally. Anker respects the intellectual property rights of others. And Anker is active in protecting its own intellectual property rights. At present, Anker has filed more than 1,000 patent applications worldwide, and holds more than 600 issued patents.

10. AnkerDirect distributes Anker products in the United States, including sales through Amazon.com.

11. On or about May 2018, Anker released its PowerPort Cube product, shown below. The PowerPort Cube is a portable charging solution that provides 3 AC outlets and 3 USB ports in a compact, cube-based design.




12. The PowerPort Cube provides an AC outlet on each of 3 faces and 3 USB ports on a single face. The power cable extends from a different face, and the sixth face is flat for

resting on or attaching to surfaces.

13. While cube and rounded-cube shapes for power chargers were previously known, Anker's PowerPort Cube combined the space-saving design with Anker's PowerIQ smart charging technology and superior safety features.

14. Anker's PowerPort Cube is covered by U.S. Design Patent No. D881,820, filed on November 17, 2017 and issued on April 21, 2020.

### Anker's Interactions With 360 Electrical

15. 360 Electrical purports to be the owner of U.S. Design Patent Nos. D834,520 ("the '520 Patent"), D866,472 ("the '472 Patent"), and D879,721 ("the '721 Patent"). True and correct copies of the '520, '472, and '721 Patents are attached hereto as Exhibits A through C, respectively. The '472 and '721 Patents are continuations of the '520 Patent that purport to have broader scope by removing features claimed in the '520 Patent.

16. The '520 Patent was filed on October 31, 2016 and issued on November 27, 2018, after Anker's PowerPort Cube was already on sale.

17. The '472 Patent was filed on November 21, 2018, about half a year after Anker's PowerPort Cube was already on sale, and issued on November 12, 2019.

18. On or about January 7, 2019—while the '472 Patent was pending—counsel representing 360 Electrical sent a letter to Anker Innovations Limited, AnkerDirect's parent company, stating it had recently become aware of Anker's PowerPort Cube product "on sale through on-line retailer Amazon." The January 7, 2019 letter attached a copy of the '520 Patent and alleged that the PowerPort Cube bore "striking similarities" to and infringed the '520 Patent under the "ordinary observer" test. The letter acknowledged there were "small differences between elements of 360 Electrical's design as claimed in the '520 patent" but argued "those

differences do not exist in the continuation application."

19. On or about January 25, 2019, Anker Innovations Limited sent an email to 360 Electrical's counsel expressing its belief that the PowerPort Cube did not infringe the '520 Patent and that the '520 Patent was invalid. Anker's January 25, 2019 letter provided four examples of prior art designs that had issued before October 31, 2016, and identified several differences between the PowerPort Cube's design and the '520 Patent.

20. After receiving Anker Innovations Limited's email of January 2019, 360 Electrical filed the '721 Patent on May 29, 2019, which issued on March 31, 2020.

21. After January 2019, Anker did not hear from 360 Electrical again until July 2020. On or about July 6, 2020, counsel for 360 Electrical sent another letter to Anker Innovations Technology Co. Ltd., under its former name "Anker Technology Co. Ltd.," at AnkerDirect's Delaware address. 360 Electrical's July 6, 2020 letter again accused Anker's PowerPort Cube of infringing 360 Electrical's patents, which now included the '472 Patent that had issued after the January 2019 letters and the '721 Patent that had been filed after the January 2019 letters. A true and correct copy of the July 6, 2020 letter is attached hereto as Exhibit D. The July 6, 2020 letter provided no infringement analysis and ignored Anker's prior art and non-infringement arguments, stating only that it "disagrees with [Anker's] assessment" and "we are confident you will agree that these arguments are completely negated by the designs claimed in the '472 and '721 Patents." The July 6, 2020 letter further stated that "360 Electrical has prepared the attached draft Complaint for filing with the Court of the District of Delaware. If Anker does not voluntarily agree to stop selling its products that infringe 360 Electrical's design patents, the Complaint will be filed." The letter demanded a response by July 29, 2020. Anker's counsel conferred with 360 Electrical's counsel but did not reach a resolution.

22. On information and belief, 360 Electrical also submitted to Amazon a complaint alleging Anker infringed the '472 Patent, causing Amazon to delist Anker's PowerPort Cube product. Specifically, on or about July 14, 2020, AnkerDirect received a notification from Amazon stating that its listing for the PowerPort Cube product had been removed because Amazon received a report that the product infringed the '472 Patent. As "rights owner's contact details" Amazon provided the email address of an attorney at Lee & Hayes, the same law firm that had sent the January 7, 2019 and July 6, 2020 letters.

23. AnkerDirect promptly disputed the infringement allegation, provided evidence of non-infringement and invalidity, and escalated the issue within Amazon.

**The Prior Art**

24. As noted above, other six-sided power charger designs existed before both Anker's PowerPort Cube and the '520, '472, and '721 Patents.

25. For example, Chinese registered design CN 302053975 S ("CN'975") was published on August 29, 2012. A true and correct copy of CN'975 is attached hereto as Exhibit E.

26. Chinese registered design CN 302153851 S ("CN'851") was published on October 31, 2012. A true and correct copy of CN'851 is attached hereto as Exhibit F.

27. Chinese registered design CN 303423238 S ("CN'238") was published on October 28, 2015. A true and correct copy of CN'238 is attached hereto as Exhibit G.

28. Chinese registered design CN 303319124 S ("CN'124") was published on August 5, 2015. A true and correct copy of CN'124 is attached hereto as Exhibit H.

29. Chinese registered design CN 302053976 S ("CN'976") was published on August 29, 2012. A true and correct copy of CN'976 is attached hereto as Exhibit I.

30. As shown below, all of the aforementioned prior art have a cube or rounded cube shape, just like the '520, '472, and '721 Patents, and have other design features in common with the '520, '472, and '721 Patents.



| '472 Patent[2] | CN'975 | CN'851 |
| CN'238 | CN'124 | CN'976 |

31. As alleged below, AnkerDirect seeks declaratory judgment that the '520, '472, and '721 Patents are invalid, including over the prior art references herein.

32. In addition, these prior art references show that Anker does not infringe. Design patent infringement and validity is analyzed under an ordinary observer test, **taking into account**

---

[2] The '520, '472, and '721 Patents have essentially the same figures, with differences only in which portions of the figures are drawn in broken lines and thus not claimed.

**the prior art**.  *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 676-77 (Fed. Cir. 2008) (*en banc*).  Performing the three-way comparison provided by *Egyptian Goddess*, an ordinary observer would not believe Anker's PowerPort Cube design to be the same as the designs in the '520, '472, and '721 Patents.  For example, the exemplary three-way comparison below of certain views shows that, if anything, the '520, '472, and '721 Patents are closer to the prior art than to Anker's PowerPort Cube design.



| CN'975 | '520 Patent | PowerPort Cube |



| CN'975 | '520 Patent | PowerPort Cube |

**COUNT I**
**Declaratory Judgment of Non-Infringement**

33. Plaintiff incorporates paragraph 1 through 32 of this Complaint as if set forth fully herein.

34. As described above, 360 Electrical has alleged that Anker's PowerPort Cube product infringes one or more of the '520, '472, and '721 Patents. 360 Electrical has drafted a patent infringement complaint against Anker and stated its intent to file suit in this District if Anker does not cease and desist selling the allegedly infringing products. In addition, 360 Electrical's allegations of patent infringement have caused Amazon to remove AnkerDirect's product listings. Therefore, there is an actual, substantial, continuing, and justiciable controversy between AnkerDirect and 360 Electrical regarding whether Anker and Anker's PowerPort Cube infringe any of the '520, '472, and '721 Patents.

35. As shown through the three-way comparisons above, AnkerDirect does not infringe, and has not infringed, any of the '520, '472, and '721 Patents.

36. AnkerDirect is entitled to a declaratory judgment that it has not infringed and is not infringing the '520, '472, and '721 Patents.

## COUNT II
**Declaratory Judgment of Invalidity**

37. Plaintiff incorporates paragraph 1 through 36 of this Complaint as if set forth fully herein.

38. One or more of the '520, '472, and '721 Patents are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 171, 102, 103, and/or 112.

39. For example, an ordinary observer, giving such attention as a purchaser usually gives, would perceive the '520, '472, and/or '721 Patents to be substantially the same as one or more of CN'975, CN'851, CN'238, CN'124 and CN'976. Thus, the claims of the '520, '472, and '721 Patents are invalid under at least 35 U.S.C. § 102, at least in view of CN'975, CN'851, CN'238, CN'124 and CN'976.

40. Alternatively, in light of those same prior art references, the designs of the '520, '472, and/or '721 Patents would have been obvious to a designer of ordinary skill with the claimed type of article. Thus, the claims of the '520, '472, and '721 Patents are invalid under at least 35 U.S.C. § 103, at least in view of CN'975, CN'851, CN'238, CN'124 and CN'976.

41. Additionally, certain claims of the '472 and '721 Patents are invalid under 35 U.S.C. § 112 for lack of written description. For example, the '520 Patent would not have reasonably conveyed to an ordinary designer at the time of the invention that the inventor was in possession of the designs claimed in the '472 and '721 Patents, which converted significant solid line features of the '520 Patent to broken lines.

42. AnkerDirect is entitled to a declaratory judgment that one or more of the '520,

'472, and '721 Patents are invalid.

## COUNT III
## Trade Libel

43. Plaintiff incorporates paragraph 1 through 42 of this Complaint as if set forth fully herein.

44. On information and belief, 360 Electrical made one or more statements to Amazon that Anker infringes 360 Electrical's patents. Those statements were false because Anker does not infringe and/or the referenced patents are invalid.

45. 360 Electrical made its statements to Amazon without adequately investigating whether Anker actually infringed, such as by conducting a proper infringement analysis.

46. 360 Electrical was aware that under *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)—a case it cited in its January 7, 2019 letter—the test for design patent infringement is whether an ordinary observer, familiar with the prior art, would be deceived into believing the accused product is the same as the patented design. That is, design patent infringement is determined by a three-way comparison between the prior art, the accused design, and the asserted patent. *See id.* at 681.

47. 360 Electrical was aware of prior art, including CN'975, CN'124, CN'238, and CN'479, which Anker provided in its January 25, 2019 letter to 360 Electrical.

48. Nonetheless, despite being aware of the applicable standard and relevant prior art, 360 Electrical failed to conduct a three-way comparison to assess infringement by Anker's PowerPort Cube, and/or recklessly disregarded the fact that such an analysis shows Anker's PowerPort Cube does not infringe. On information and belief, 360 Electrical did not provide Amazon with a three-way comparison showing Anker's infringement.

49. 360 Electrical made its statements—alleging Anker's infringement of 360

Electrical's patents—to Amazon knowing they were false or with reckless disregard for whether Anker actually infringed.

50. 360 Electrical knew or should have known that Amazon would act in reliance upon 360 Electrical's statements.

51. As a result of 360 Electrical's statements, Amazon removed AnkerDirect's product listings for at least the PowerPort Cube, rendering AnkerDirect unable to sell those products through Amazon. AnkerDirect thus lost sales as a result of 360 Electrical's false statements.

52. As a result of 360 Electrical's conduct, AnkerDirect has been harmed in an amount to be proven at trial.

## COUNT IV
### Tortious Interference With Contractual Relations

53. Plaintiff incorporates paragraph 1 through 52 of this Complaint as if set forth fully herein.

54. At all relevant times, AnkerDirect has had a contractual relationship with Amazon pursuant to which Amazon lists Anker products for sale on Amazon.com.

55. 360 Electrical was aware of the contractual relationship between Anker and Amazon. For example, in its January 7, 2019 letter, 360 Electrical stated it was aware of Anker's products for sale through Amazon.

56. 360 Electrical's conduct prevented Amazon's performance of its contract with Anker and/or made performance more expensive or difficult.

57. 360 Electrical acted with intent to disrupt performance of the contract and/or knew that disruption of performance was certain or substantially certain to occur.

58. 360 Electrical disrupted the contractual relationship with an intent to harm Anker.

59. 360 Electrical disrupted the contractual relationship by improper means, including by making false assertions of patent infringement with knowledge of or reckless disregard for their falsity.

60. As a result of 360 Electrical's conduct, AnkerDirect has been harmed, including by lost sales, in an amount to be proven at trial.

## COUNT V
## Tortious Interference With Business Expectancy

61. Plaintiff incorporates paragraph 1 through 60 of this Complaint as if set forth fully herein.

62. At all relevant times, AnkerDirect has had a business relationship with Amazon pursuant to which Amazon lists Anker products for sale on Amazon.com, which provides a likelihood of future economic benefit for AnkerDirect.

63. As a result of 360 Electrical's conduct, the business relationship between Amazon and Anker was disrupted, including by Amazon's removing Anker products from its website.

64. 360 Electrical was aware of the business relationship between Anker and Amazon. For example, in its January 7, 2019 letter, 360 Electrical stated it was aware of Anker's products for sale through Amazon.

65. 360 Electrical intentionally induced or caused disruption of the business relationship between Amazon and Anker.

66. 360 Electrical disrupted the business relationship with an intent to harm Anker.

67. 360 Electrical disrupted the business relationship by improper means, including by making false assertions of patent infringement with knowledge of or reckless disregard for their falsity.

68. As a result of 360 Electrical's conduct, AnkerDirect has been harmed, including

by lost sales, in an amount to be proven at trial.

## COUNT VI
## Unfair Competition

69. Plaintiff incorporates paragraph 1 through 68 of this Complaint as if set forth fully herein.

70. 360 Electrical's conduct constitutes unfair competition or unfair trade practices.

71. For example, 360 Electrical misused its patents by making knowingly and/or recklessly false allegations of patent infringement in an effort to discourage or stifle competition from Anker.

72. As a result of 360 Electrical's conduct, AnkerDirect has been harmed in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, AnkerDirect respectfully requests the following relief:

a. A declaratory judgment that Anker's products do not infringe the '520, '472, or '721 Patents;

b. A declaratory judgment that the '520, '472, and '721 Patents are invalid;

c. An award to AnkerDirect of monetary damages to compensate it for lost sales due to the Amazon take down;

d. A permanent injunction restraining and enjoining 360 Electrical from further interference with Anker's business relationships with Amazon and other third-party retailers;

e. An accounting of lost sales not presented at trial and an award of additional damages for any such lost sales;

f. A declaration that this is an exceptional case pursuant to 35 U.S.C. § 285;

g. An award to AnkerDirect of its costs, expenses, and fees, including reasonable attorneys' fees, in this action; and

h. Such other relief as this Court may deem just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and issues triable to a jury.

ASHBY & GEDDES

*/s/ John G. Day*

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

Richard Martinelli
rmartinelli@orrick.com
Weimin Ning
wning@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Facsimile: +1 212 506 5151

Lillian Mao
lmao@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

Yufeng (Ethan) Ma
yma@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
Telephone: +86-21-6109-7108

Dated: August 20, 2020